UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAT PROBUS                                                                                                  PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:04-CV-582-S

CHARTER COMMUNICATIONS, LLC                                                     DEFENDANTS
and
KELLY GUILES

### MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment by the defendants, Charter Communications ("Charter") and Kelly Guiles ("Guiles"). This case involves the plaintiff's claims of employment discrimination under the Kentucky Civil Rights Act ("KCRA") as well as tort claims for intentional infliction of emotional distress and slander. For the reasons set forth below, the court will grant the defendants' motion for summary judgment on all claims.

### FACTS

The plaintiff, Pat Probus ("Probus"), began working for Charter in January of 2003. While working at Charter, Probus, a Caucasian, sat facing Guiles, an African-American, from the spring of 2003 until late September of that year. When Probus learned that Guiles had broken up with her boyfriend and needed a new place to live, Probus allowed Guiles to move into her two bedroom condominium. Guiles paid $250.00 in monthly rent and split the utility bills with Probus. In August of 2003, Probus decided to sell her condominium and Guiles soon made other living arrangements. Probus claims that Guiles still owed her approximately $350 in unpaid rent and utility payments. Probus left a note on Guiles' desk at work informing her of this outstanding debt.

1

When Guiles read the note, she became angry and confronted Probus, loudly shouting profanity at her. Guiles' supervisor, Bruce Metcalf, also African-American, witnessed the outburst. Metcalf immediately told Guiles to "quiet down," took her "off the floor" for ten to fifteen minutes and directed Guiles to apologize to Probus. Probus alleges that, after this incident, Guiles began to harass her in the workplace. Probus claims that Guiles began burning scented candles and spraying air fresheners near Probus, who has allergies to such fragrances. She also claims that Guiles began spreading rumors that Probus was asking Guiles to pay Probus' bills, that Probus was not a good housekeeper and that Probus was a lesbian. Probus reported Guiles behavior to Metcalf, to Human Resources' ("HR") employees April Irving and Ladell Richardson, both of whom are African-American, and to Call Center Manager Anita Hastings, a Caucasian. Probus claims that no action was taken against Guiles.

On August 20, 2003, Probus received a verbal warning regarding attendance problems because she had accrued 9 "occurrences" since she began working there in August. Charter's attendance policy considers any unscheduled absence as an "occurrence." Each "tardy" or "leave early" counts as .3 of an occurrence, and any individual tardy or leave early that equals or exceeds half of the employee's scheduled shift amounts to 1 full occurrence. Charter's policy provides that any employee who accumulates 8 occurrences in a twelve month period can receive a verbal warning. After 9 occurrences, the employee may receive a written warning and after 10, the employee may receive a final warning. Accumulating 11 or more occurrences may result in disciplinary action up to and including termination of employment. In accordance with this policy, Probus received the verbal warning on August 20, 2003. On October 14 she received a written warning indicating that she had accrued 11.3 occurrences and on November 24 she received a final written warning, noting that she had accrued 12.6 occurrences. After another tardy on November 26 and an absence on November 28, Probus was terminated.

She has instituted this action, alleging that Charter fired her because of her race, that Charter subjected her to a hostile work environment, and that Charter retaliated against her in violation of KCRA. She also asserts claims against Guiles directly and Charter, under a theory of vicarious liability, for intentional infliction of emotional distress and against Guiles for slander. Charter and Guiles have filed a motion for summary judgment on all claims.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

## DISCUSSION

### *I. Discriminatory Discharge*

3

Probus alleges that Charter violated KRS 344.040 when it terminated her because of her race. She presents no direct evidence linking her termination to her race. In the absence of direct evidence, however, Probus may rely upon the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Kentucky courts apply the *McDonnell Douglas* framework to discrimination cases brought under state law." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802, fn. 8 (6th Cir. 1994). Under this model, Probus must first show that she was (1) a member of a protected class (2) subjected to an adverse employment action; (3) qualified for her position; and (4) treated differently than similarly situated employees for the same or similar conduct. *See, e.g., Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 882-83 (6th Cir. 1996). Then the burden of production would shift to Charter to provide a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas,* 411 U.S. at 802. The ultimate burden of persuasion rests with Probus to establish that Charter's proffered reason was merely pretext for discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed. 207 (1981).

Charter contends that Probus has failed to establish the first and last element of her *prima facie* case. In a case of "reverse discrimination," the Sixth Circuit Court of Appeals has adapted the first prong of the requisite *prima facie* case so that Probus must "demonstrate background circumstances [to] support the suspicion that the defendant is the unusual employer who discriminates against the majority." *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (2003). Probus argues that she has met this burden by showing that most of her supervisors and co-workers were African-American. She provides no statistics, but rather points out that Guiles, Metcalf and the two Human Resources employees to whom she complained were all African-American. However, the highest official involved in this situation, Hastings, was Caucasian. Probus also argues that she has "shown a pattern of less favorable treatment for her as compared to the African-Americans." Plaintiff's Response (DN 19), p. 16. Her own deposition

4

testimony, however, contradicts this assertion. She acknowledged that other employees (both African-American *and* Caucasian), who had accumulated more occurrences than she did, were not fired. Probus Depo., p. 83. These facts lead to the conclusion that race was not the determining factor in such decisions. Accordingly, Probus has not established circumstances indicating that Charter is the rare employer who discriminates against the majority.

Similarly, she has not established that similarly situated individuals were treated differently for the same or similar conduct. First, Probus notes that Charter exhibited a "double standard" in dealing with Probus and Guiles. Plaintiff's Response (DN 19), p. 16. However, Guiles and Probus did not engage in the same or similar conduct. Guiles' misconduct involved shouting profanity at a co-worker and spreading rumors in the workplace while Probus' misconduct involved excessive absenteeism. The two women's circumstances are simply not comparable. Probus also identifies Reggie Jackson, an African-American, as a similarly situated individual. She claims that he acquired more occurrences than Probus and was not fired. In fact, he was promoted in spite of his absenteeism. Aside from her own affidavit, Probus has failed to submit any evidence detailing Jackson's attendance record. Furthermore, even assuming that he had more occurrences, Probus' testimony that other Caucasian employees with more occurrences were not fired refutes her assertion that minority employees were treated more favorably.

Because she has failed to establish that she was a member of a protected class under the standard in reverse discrimination cases and that similarly situated employees were treated differently for the same or similar conduct, Probus has failed to establish her *prima facie* case. Assuming *arguendo*, however, that she had met her burden, Charter has provided a legitimate, nondiscriminatory reason for her termination. In fact, Probus admitted that Charter met its burden by pointing to her attendance problems. Therefore, the final burden rests with Probus to establish sufficient evidence from which a jury could reasonably

conclude that Charter's purported reason is merely pretext for discrimination. *See Burdine*, 450 U.S. at 255-56. Probus can meet her burden by establishing: "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original and citations omitted). As discussed above, there is no dispute regarding Probus' actual attendance record. She exceeded the number of permitted occurrences and she received warnings regarding her absenteeism. Charter's policy expressly stated that poor attendance may result in discharge. As these facts are undisputed, Probus cannot establish that Charter's proffered reason had no basis in fact or that it was insufficient to motivate the discharge. Instead, she seems to rely upon the second way to establish pretext, arguing that her absenteeism did not actually motivate her discharge.

Probus argues that Charter's attendance policy was applied inconsistently, noting that some employees who amassed more than 11 occurrences in a rolling 12 month period were not fired. She claims that an "inference arises that the company used [the attendance policy] whenever it singled out an employee for discharge." Plaintiff's Response (DN 19), p. 18. However, she has not established that Charter used its attendance policy as pretext for racial discrimination when it fired Probus. The law requires "that an employer not discriminate against an employee on the basis of the employee's protected class characteristics." *Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220 (10th Cir. 2000). Probus is required to show that Charter's purported legitimate reason somehow camouflages an unlawful employment action taken against her. "The soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Chappell v. GTE Products Corp.*, 803 F.2d 261 (6th Cir. 1986). "The plaintiff[] may not simply substitute [her] own business judgment for that of the defendant." *Rowan v. Lockheed Martin Energy Systems, Inc.,* 369 F.3d 544, 550 (6th Cir. 2004). Furthermore, employment statutes such as KRS Ch. 344, do

6

> *not* make unexplained differences in treatment per se illegal nor [do they] make inconsistent or irrational employment practices illegal. [They] prohibit only intentional discrimination *based upon* an employee's protected class characteristics. . . . Large employers must deal with a multitude of employment decisions . . . that will inevitably differ even among seemingly similar situations.

*Kendrick*, 220 F.3d at 1232 (emphasis in original). The record in this case is devoid of evidence permitting an inference that race was a determining factor in Probus' discharge. On the contrary, the record shows that Probus was fired for sound reasons; namely, her excessive absenteeism. Probus has not carried her burden in establishing that Charter's legitimate business reason did not actually motivate its decision to terminate her or that it masked any underlying discriminatory animus. Accordingly, we will grant the defendant's motion for summary judgment on the race discrimination claim with regard to her termination.

### *II. Hostile Work Environment*

Probus also claims that Charter discriminated against her based upon her race by subjecting her to a hostile work environment. A hostile work environment claim, under Title VII, is actionable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotations omitted). To establish a *prima facie* case, Probus must demonstrate that 1) she was a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based upon her status in the protected class; 4) the harassment effectively interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

Probus identifies Guiles' behavior after their confrontation as the harassment. She claims that when Guiles began burning scented candles and spraying air fresheners near Probus, who had fragrance

allergies, this created a hostile working environment. Probus claims that such fragrances made her physically ill, thereby increasing the likelihood of an absence from work. Probus also claims that Guiles was spreading rumors about her in the workplace. She contends that Charter is liable for the creation of this hostile work environment because Charter management and HR employees did not remedy the situation when Probus complained about Guiles' actions.

Probus has not established the requisite elements of her *prima facie* case. First, as noted in the previous section, she has not established that she is a member of a protected class by demonstrating that Charter discriminates against the majority. Next, the record is completely devoid of any evidence connecting the purported harassment to her race. Probus maintains that "the causal nexus between Probus' race and the harassment of which she has complained is established by the same facts that support the claim of discriminatory discharge." Plaintiff's Response (DN 19), p. 20-21. For the reasons outlined above, we reject this argument, finding no record evidence that race was the determining factor in any employment decision made by Charter regarding Probus. Probus highlights the fact that Charter's management "ignored" Probus' complaints. This argument misses the mark because none of her complaints even hinted at a racial component to the conflict between Guiles and Probus. Even if management did ignore her complaints, that fact does not establish the requisite causal nexus between *race* and the harassment. Finally, Probus has presented no evidence establishing that the purported harassment interfered with her performance at work. The actions complained of by Probus do not rise to the level required of a hostile work environment. Accordingly, we will grant the defendant's motion for summary judgment on this claim.

### *III. Retaliation*

KRS 344.280(1) makes its unlawful for a person to retaliate against another person because she "has opposed a practice declared unlawful by this chapter, or because [s]he has made a charge, . . . or

participated in any manner in any investigation, proceeding, or hearing under this chapter . . . ." Probus contends that Charter violated this provision when it retaliated against her for complaining about Guiles' actions.

To establish such a claim, Probus must establish the following elements of her *prima facie* case: (1) she engaged in a protected activity, (2) she was disadvantaged by an act of her employer, and (3) there was a causal connection between the activity engaged in and the employer's act. *Kentucky Dep't of Corrections v. McCullough*, 123 S.W.3d 130, 133-34 (Ky. 2004). Probus did not engage in a protected activity. In fact, she admits that she never complained about race discrimination during her employment. Plaintiff's Response (DN 19), p. 21. She contends that Charter should somehow have foreseen "potential race discrimination" by the mere fact that she complained about the actions of a co-worker of another race. We reject such contention and conclude that absent the slightest hint of a racial component to her complaints, she was not engaged in protected activity. Furthermore, the record is wholly devoid of any evidence that her termination was linked, in any way, to her complaints about Guiles' behavior.

Even if Probus had established a *prima facie* case, Charter has provided a legitimate and nondiscriminatory purpose for firing her; that is, her excessive absenteeism. If Probus established her *prima facie* case, the burden would shift to Charter to articulate some such legitimate reason for her termination. *See Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990). Since Charter met its burden, the final burden of persuasion again rests with Probus to establish that the proffered reason was merely pretext. *See id.* As previously discussed, Probus has provided no evidence that her violation of the attendance policy was not the true cause of her termination. Therefore, her reprisal claim must fail as well.

### *IV. Intentional Infliction of Emotional Distress*

"Under Kentucky law, one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 795 (6th Cir. 2000) (citing *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984). The elements of proof necessary to sustain a claim of outrageous conduct are: (1) intentional or reckless conduct on the part of the wrongdoer; (2) outrageous and intolerable conduct in that it offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Id.* (citing *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky, 1990). Furthermore, "Kentucky law requires that the conduct in question must be a deviation from all reasonable bounds of decency and . . . utterly intolerable in a civilized community." *Id.* (citations omitted).

Probus has failed to meet this extremely high threshold. She claims that "it was heartless, flagrant, and outrageous for Kelly Guiles to inflict perfume and other scents upon Probus while knowing how noxious these odors could be to Probus" and that Charter "ratified" her conduct and is therefore vicariously liable to Probus. Plaintiff's Response (DN 19), p. 10, 13. Relying upon established precedent in Kentucky, we find that Guiles actions do not rise to the level of "outrageous and intolerable conduct." For example, the Kentucky courts found that the threshold level of outrageousness was not met where the defendant erected a billboard in his neighborhood warning "Danger-Child Molester in the Community," when the plaintiff had been convicted of sexual abuse. *Allen v. Clemons*, 920 S.W.2d 884, 886 (Ky. App. 1996). Similarly, a federal district court applying Kentucky law found that the threshold was not met where the defendant, the plaintiff's supervisor, who was transferred and ordered not to contact her, nonetheless continued to harass her. *Morris*, 201 F.3d at 787. He visited her at work at least fifteen times, parked outside her place of business and peered in her window while "making faces at her"called her more than thirty times, followed her home, destroyed her television at work, and

threw roofing nails on her driveway on several different occasions. *Id.* at 795. The Kentucky courts also rejected an outrageous conduct claim where a hospital nurse loudly ordered the plaintiff, who was delivering her baby in a bedpan, to "shut up" and another nurse callously informed the plaintiff that her deceased baby would be disposed of in the hospital. *Humana*, 796 S.W.2d at 2-3. Guiles' conduct certainly does not rise to the level of these example cases; accordingly, her claim, too, falls short of the requisite threshold.

Additionally, while counsel argues that "the strong possibility of physical illness as a price for attending work" caused Probus distress, there is no record evidence that Probus actually suffered severe emotional distress because of her exposure to the fragrances. Plaintiff's Response (DN 19), p. 11. Accordingly, we will grant the defendants' motion for summary judgment on this claim as well.

### *V. Slander*

Finally, Probus asserts a claim against Guiles for slander because Guiles spread rumors that Probus was trying to get money from Guiles for house bills, that Probus was not a good housekeeper and that Probus was a lesbian. To establish such a claim, Probus must demonstrate the following elements of her *prima facie* case: (1) defamatory language, (2) about the plaintiff, (3) which is published and (4) which caused injury to the plaintiff. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W. 3d. 781, 793 (Ky. 2004). Under Kentucky law, there are two types of slander: slander *per se* and slander *per quod*. *Id.* at 794. If the statement constitutes slander *per se*, damages are presumed; but if it is slander *per quod*, the plaintiff must allege and prove special damages. *Id.* "[S]poken words are slanderous *per se* only if they impute crime, infectious disease, or unfitness to perform duties of office, or tend to disinherit" the person. *Id.* at 795.

Probus contends that Guiles' words constitute slander *per se* because they imputed criminal activity to Probus. Plaintiff's Response (DN 19), p. 14. Specifically, she characterizes Guiles'

11

statements that Probus was asking her for money to pay bills as allegations of "attempted theft by extortion." Guiles' statements do not meet the definition of extortion under Kentucky law, which requires that the extortionist use some threat as a bargaining chip to convince the victim to pay. There is no such allegation in the case at bar. Furthermore, Probus does not even allege that Guiles used the word "extort" or that any co-workers attributed her statements as accusations of extortion; such characterization came directly from Probus. A dispute between roommates over bills simply does not fit within the definition of alleged "criminal activity."

To sustain a claim of slander *per quod*, Probus must allege and prove special damages. She has failed to do so. Probus appears to rest her entire claim on a theory of slander *per se*. Plaintiff's Response (DN 19), p. 15. As she has failed to carry her initial burden on either slander theory, we will grant the defendants' motion for summary judgment on this claim as well.

For the reasons set forth above, the court will grant the defendants' motion for summary judgment on all claims in this case. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record